UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11350-RWZ

THOMAS LOCKE

v.

US AIRWAYS, INC.

MEMORANDUM OF DECISION

September 27, 2013

ZOBEL, D.J.

Defendant US Airways, Inc., terminated plaintiff Thomas Locke's employment for stealing company property. Plaintiff's second amended complaint claims that defendant breached an agreement with plaintiff providing for his conditional reinstatement (Count I). Plaintiff also alleges defendant wrongfully terminated him (Count II) and violated the covenant of good faith and fair dealing (Count III). Defendant moves for summary judgment.

I.  **Background**

Prior to his termination, plaintiff worked as a maintenance technician for defendant at Logan International Airport in Boston, Massachusetts. In August 2009, defendant received several telephone calls reporting repeated theft of items from its aircraft and identifying plaintiff as the thief. The Massachusetts State Police conducted surveillance of plaintiff and on September 18, 2009, observed him carrying a black trash bag and blue and white cooler. Two officers identified themselves, and plaintiff

accompanied them to the police barracks. There, the officers searched the contents of the bag and cooler and found toilet paper, several kinds of beer, sodas, bottled coffee drinks, sandwiches, soap dispensers, and other items. Plaintiff admitted he had stolen the items. Police released him but retained the badge he needed to gain access to secure areas at Logan Airport.

Plaintiff, like other mechanics at Logan, is represented by the International Association of Machinists ("IAM"). The terms and conditions of his employment are subject to a collective bargaining agreement ("CBA") between IAM and defendant. Because the CBA required defendant to decide plaintiff's discipline within five days, a period too short to confirm the circumstances of the alleged theft, defendant offered him a Last Chance Agreement ("LCA"). The LCA required plaintiff to admit that he had not met defendant's standards with respect to company property. It further stated plaintiff would be suspended until October 16, 2009, and that his reinstatement was contingent on his fulfilling all stated requirements, which included his obtaining a security badge. He signed the LCA, and after the period of suspension reapplied for a security badge. His application was denied. Defendant, by letter dated November 13, 2009, terminated plaintiff's employment for failing to obtain the required badge and report to work on October 16, 2009, as the LCA required. This suit followed.

**II.     Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the record in the light most favorable

to the nonmoving party and draw all justifiable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If the evidence presented would allow a reasonable jury to return a verdict for the nonmovant, summary judgment must be denied. Id. at 248. "Unsupported allegations and speculation do not demonstrate . . . the existence of a genuine issue of material fact sufficient to defeat summary judgment." Rivera-Colon v. Mills, 635 F.3d 9, 12 (1st Cir. 2011).

### III.    Analysis

#### A.    Preemption Under the Railway Labor Act

Defendant first urges that plaintiff's state law claims are a "minor dispute" subject to compulsory arbitration under the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.*, divesting the court of subject matter jurisdiction[1] and requiring dismissal of the case. See Fed. R. Civ. P. 12(h)(3).

The RLA was enacted "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." Id. § 151a(5).[2] It divides labor disputes into two classes. The first class, "major disputes," "relate[s] to 'the formation of collective [bargaining] agreements or efforts to secure them.'" Hawaiian Airlines v. Norris, 512 U.S. 246, 253 (1994) (quoting Consol. Rail Corp.

---

[1] A circuit split has arisen regarding whether the RLA's mandatory arbitral mechanism is "jurisdictional" or instead implicates only the court's ability to reach the merits of the dispute and grant relief. The Sixth Circuit alone holds the latter view. Compare Emswiler v. CSX Transp., Inc., 691 F.3d 782, 790 (6th Cir. 2012) (citing Arbaugh v. Y & H Corp., 546 U.S. 500 (2006)), with, e.g., Oakey v. U.S. Airways Pilots Disability Income Plan, 723 F.3d 227, 238 (D.C. Cir. 2013).

[2] The RLA was extended in 1936 to cover the airline industry. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 248 (1994) (quotation and citation omitted).

(Conrail) v. Ry. Labor Exec. Ass'n, 491 U.S. 299, 302 (1989)).  "Minor disputes," the second class, "involve 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.'" Id. (quoting Bhd. of R.R. Trainmen v. Chi. River & Ind. R.R. Co., 353 U.S. 30, 33 (1957)).  "Major disputes seek to create contractual rights, minor disputes to enforce them."  Conrail, 491 U.S. at 302.   If a dispute is "minor," it must be resolved through the RLA's arbitration mechanism.  45 U.S.C. § 184; Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co., 210 F.3d 18, 23 (1st Cir. 2000).

The Supreme Court has made clear that the RLA covers only CBAs.  See Norris, 412 U.S. at 253 ("Minor disputes involve controversies over the meaning of an existing *collective bargaining agreement* . . . .") (emphasis added); Conrail, 491 U.S. at 310 ("Referring arbitrable matters to the [arbitration board] will help to 'maintain agreements' by assuring that *collective-bargaining contracts* are enforced by arbitrators who are experts in 'the common law of [the] particular industry." (second alteration in original) (emphasis added) (quoting United Steelworkers v. Warrior Gulf & Navigation Co., 363 U.S. 574, 579 (1960))); Bhd. of R.R. Trainmen, 353 U.S. at 33; Elgin, Joliet & E. Ry. Co. v. Burley, 325 U.S. 711, 723 (1945); Williams v. Jacksonville Terminal Co., 315 U.S. 386, 399 (1942) ("Independent individual contracts are not affected by the [RLA]."). This is so because the RLA was passed to try to "avoid any interruption to commerce or to the operation of any carrier engaged therein."  45 U.S.C. § 151a(1); Texas & N.O.R. Co. v. Bhd. of Ry. & Steamship Clerks, 281 U.S. 548, 565 (1930) (stating "the major purpose of Congress in passing the [RLA] was to provide a machinery to prevent

strikes" (internal quotation and citation omitted)).  An individual employment contract, however, is less likely to precipitate a labor strike and thereby disrupt interstate commerce.  See Fairbairn v. United Air Lines, Inc., 250 F.3d 237, 242 (4th Cir. 2001).

Plaintiff's termination was governed not by the CBA between defendant and the IAM, but by the individualized LCA he signed with defendant.  Indeed, his claim is based entirely on the latter.  Therefore, the present dispute is not one which Congress intended to fall within the scope of the RLA.  Cf. Allis-Chambers Corp. v. Lueck, 471 U.S. 202, 208 (1985) (stating preemption of state law claims turns on congressional intent).  Thus, plaintiff's state law claims are not preempted.

### B.   Count I: Breach of Contract

Plaintiff asserts the LCA guaranteed his return to work following his one-month suspension.  He cites the following particulars: (1) Michael Bashar, defendant's Station Director at Logan Airport, obstructed the state police's decision to reissue plaintiff's security badge; (2) defendant interfered with plaintiff's efforts to be transferred to the Philadelphia airport; and (3) the LCA does not state plaintiff had to obtain his security badge by a certain date, but defendant fired him anyway.

The difficulty with plaintiff's claims is that the record is without any facts to support the first two and the LCA is clear that he needed a security badge by the date he was to be reinstated.  Indeed, plaintiff supports his claims only with citations to his own deposition and his interpretation of Bashar's, neither of which creates a genuine issue of material fact.  The motion for summary judgment is allowed as to Count I.

### C.   Count II: Wrongful Termination

Plaintiff next claims that he was wrongfully terminated in violation of public policy. Massachusetts law is clear that this cause of action is available only to "at-will" employees. Norris v. Lumbermen's Mut. Cas. Co., 881 F.2d 1144, 1152-53 (1st Cir. 1989) (quoting Hobson v. McLean Hosp. Corp., 522 N.E.2d 975, 977 (Mass. 1988)). Plaintiff was not an "at-will" employee. Instead, he was a union member whose employment was subject to the terms of a CBA. This claim fails because Massachusetts law does not permit him to bring a wrongful termination action.

### D.     Count III: Breach of Implied Covenant of Good Faith and Fair Dealing

Massachusetts law implies a covenant of good faith and fair dealing in every contract. Fortune v. Nat'l Cash Register Co., 364 N.E.2d 1251, 1257 (Mass. 1977). A cause of action for breach of the covenant, however, is limited to situations in which "an employer is accountable to a discharged employee for unpaid compensation if the employee was terminated in bad faith and the compensation is clearly connected to work already performed." Harrison v. NetCentric Corp., 744 N.E.2d 622, 629 (Mass. 2001). Harrison forecloses plaintiff's claim because he has not argued defendant denied him any pre-termination compensation.

## IV.    Conclusion

Defendant's motion for summary judgment (Docket # 17) is ALLOWED. Judgment will be entered accordingly.

    September 27, 2013                          /s/Rya W. Zobel

DATE                                                          RYA W. ZOBEL
                                                     UNITED STATES DISTRICT JUDGE